UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DENNIS LEE EATON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 3:15-CV-520 JD |
|  | ) |  |
| CAROLYN W. COLVIN, Acting | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## **OPINION AND ORDER**

On November 5, 2015, Plaintiff Dennis Eaton filed a complaint in this Court which was reassigned to the undersigned on May 1, 2017.[1] Eaton is seeking review of the final decision of the Defendant Commissioner of Social Security denying his application for social security disability benefits [DE 1]. The matter is fully briefed and ripe for decision [DE 17; DE 25; DE 28]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTS

Eaton filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 3, 2011,[2] alleging an onset date of July 2009, which was later amended to June 1, 2011. Eaton must establish disability on or before June 30, 2013, in order to

---

[1] The Court apologizes to the parties for any inconvenience caused by the delay in the handling of this case prior to its reassignment.

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 401.1501 *et seq.*, while the SSI regulations are set forth at 20 C.F.R. § 416.901 *et seq.* Because the definition of disability and the applicable five-step process of evaluation are identical for both DIB and SSI in all respects relevant to this case, reference will only be made to the regulations applicable to DIB for clarity.

be entitled to DIB. Eaton contends that he is unable to work because he suffers from severe chronic obstructive pulmonary disease ("COPD"), emphysema, and a collapsed lung. X-rays and CT scans demonstrate that Eaton has large bullae (air pockets) caused by smoking and areas of scarring caused by welding fumes.[3] R. at 226-27, 309, 344-45, 354, 406, 434-35, 474-76, 578. Eaton's pulmonary function tests confirm that he has restrictive airway disease with air trapping and compromised ability to exhale. R. at 325-27, 346-47, 364-380, 480. In the Summer of 2012, Eaton's primary care physician, Francis Ruzicka, M.D., and treating pulmonologist, Emad Botros, M.D., opined that Eaton's COPD and lung issues would cause Eaton to be distracted from work more than fifteen percent of a workday, would require Eaton to take at least four (and up to ten) unscheduled breaks during a workday, and would allow Eaton to sit for only two hours and stand/walk for less than two hours total in a workday. R. at 389-94. Both doctors believed that Eaton could never lift anything over ten pounds, and only rarely lift something less than ten pounds. *Id*.

Eaton's applications were denied initially in November 2011 and on reconsideration in March 2012. On December 3, 2013, Eaton and a vocational expert ("VE") testified during a hearing held before Administrative Law Judge Wayne Ritter ("ALJ"). Eaton testified that he had previously worked as an order picker, industrial cleaner, and welder. Most recently, he worked for a pizza restaurant taking telephone orders, but he could not perform the job because of his coughing attacks. Eaton indicated that despite trying to stop smoking on many occasions, he was a heavy smoker until finally quitting in August 2013. However, he testified to experiencing no improvements after smoking cessation. Eaton explained that his medical problems cause him to

---

[3] In September 2009, a bulla in the right lung measured fourteen centimeters and a bulla in the left lung measured ten centimeters. R. at 344. CT scans in 2011 showed interval collapse of the largest right apical bulla and expansion of other air pockets. R. at 226-27; 474-75.

experience tightening of the chest, fatigue, dizziness, and coughing attacks resulting in non-cardiac chest pains. As a result, he sleeps only three to four hours at night and must lie down for about two to four hours during the day. Eaton indicated that his breathing symptoms are exacerbated by the weather, environmental irritants, and exertion. Eaton explained that he has been advised by his doctors not to bend, lift overhead, or lift more than ten pounds due to the nodules on his lungs which could rupture. Eaton testified that he must take breaks when trying to complete household chores and that he must use an Albuterol nebulizer every three to four hours throughout the day (with each time taking roughly fifteen to twenty minutes to complete). Eaton explained that he has days where he is totally incapacitated, which means that he must stay in bed due to a lack of energy and coughing fits. Even on a good day, Eaton can suffer up to fifteen coughing fits that last for approximately five to fifteen minutes each.

The VE testified that based strictly on the (relevant) hypothetical posed to him (which offered an assigned residual functional capacity ("RFC")[4] of medium work, limited by no climbing of ladders, ropes, scaffolds, ramps and stairs, and avoiding moderate exposure to extreme heat/cold, humidity, pulmonary irritants, heights, hazards, and moving machinery), Eaton would not be able to perform his past work, but could perform unskilled work as an office clerk, laundry worker, and stock clerk. The VE confirmed that, generally speaking, a person cannot maintain competitive work if he would be off-task more than ten percent of the workday or if he needed unscheduled work breaks. R. at 60-61. The VE also acknowledged that based on the coughing fits exhibited by Eaton during the administrative hearing, those episodes would render Eaton off-task for more than ten percent of the time. *Id*.

---

[4] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

The ALJ issued a decision on April 24, 2014, denying Eaton disability benefits and concluding that Eaton was not disabled under the Social Security Act because he was able to perform other work in the national economy (step 5). The Appeals Council then denied Eaton's request for review on September 25, 2015, making the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Eaton seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks

evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or

equaled, then in between steps three and four, the ALJ must assess the claimant's residual functional capacity, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Eaton's appeal focuses namely on the ALJ's RFC assessment. Eaton argues that the ALJ's obvious cherry-picking resulted in the omission of relevant medical evidence which supports Eaton's contention that he suffers from further limitations as a result of his COPD and bullous emphysema. Eaton argues that because the ALJ only considered the positive aspects of Eaton's medical records, the ALJ did not adequately consider all of the medical evidence when he discounted the treating doctors' opinions, discredited Eaton, and formulated the RFC. The Court agrees.

## IV.  ANALYSIS

### A.  Cherry-picking

While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering his decision, the ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). But that is precisely what the ALJ did in this case. The ALJ's opinion is replete with his reliance only on the facts supporting his ultimate finding that Eaton could perform work at the medium exertional level, without evidencing his consideration of a multitude of clinical notes indicating that Eaton's condition was far worse.

6

In assessing Eaton's RFC and considering whether to credit the treating physicians' opinions and Eaton's testimony, the ALJ picked through the medical records to note that treating Drs. Ruzicka and Botros said the following of Eaton's status throughout his course of treatment: Eaton is "better"; "doing decently well"; "[has] very subtle wheeze, certainly not major"; "breathing well"; "reasonably well right now"; "doing well since his hospitalization"; "doing relatively stable"; "continues to do fairly well"; "no major problems right now"; and "continue[s] to do well." R at 23-24. However, the ALJ lifted these statements entirely out of context without mentioning any of the extensive and repeated contemporaneous notes in which Drs. Ruzicka and Botros indicated that Eaton's condition was quite severe and his baseline was quite poor. *See, e.g.*, R. at 247-49, 282-302, 405-25, 428-46, 488-89, 491-92, 529-30, 542-43, 579.

More specifically, the same medical records relied on by the ALJ also reveal the following clinical notations: "The patient's breathing issues are still not improved"; "It is not optimal. He still gets winded. He is still bothered"; "Bronchospasm, wheezing problems"; "I have concerns about [his] sleep apnea, snoring, gasping. This is being put on hold until the lung issues can be furthered"; "significant problems with breathing and chest pain today"; and "shortness of breath is usually with activity." *Id*. But the ALJ did not reference these contemporaneous notes. In fact, the ALJ did not bother to specify that Eaton had at least four emergency room visits (in August 2011, March 2012, October 2012, and August 2013), at which time Eaton presented with complaints of constant sharp chest pains lasting hours, marked by coughing and shortness of breath.[5] R. at 282-302, 405-25, 428-46, 447. And consistent with the ALJ's method of cherry-picking, the ALJ's opinion says nothing about the more recent August

---

[5] Despite actually experiencing chest pain on a weekly basis, Eaton simply tried to "weather the storm," rather than repeatedly going to the hospital. R. at 529-30.

7

and September 2013 medical records which reported that Eaton's "lungs are still a major issue and give him plenty of problems" and that his COPD and wheezing problems cause him to have good days, bad days, and "completely incapacitating days." R. at 488-89, 491-92. Nor did the ALJ discuss Eaton's testimony indicating that he was in the process of scheduling his bilateral lung reduction surgery, which had been recommended by Dr. Botros back in July 2011.[6] R. at 47-48, 574, 577-578.

The ALJ's wholesale exclusion of this entire line of significant evidence supporting Eaton's claim for disability fails to demonstrate that the ALJ took into account the full extent of Eaton's problems and their limiting effects. *See Denton*, 596 F.3d at 425 (noting that the ALJ cannot ignore evidence that supports a disability finding). The ALJ's error in this respect requires remand because the ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," based upon all of the relevant evidence in the record, even as to limitations that are not severe. SSR 96–8p. In addition, the RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence." *Id*. The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). However, the ALJ's opinion in this case does not reflect his consideration of the relevant evidence and it fails to provide a logical bridge from the actual evidence to the ALJ's RFC assessment.

---

[6] Eaton had his lung reduction surgery on January 2, 2015, while his appeal was pending before the Appeals Council. Eaton's counsel makes clear that the basis for this appeal is on the ALJ's decision, which ignored all discussion of the need for lung surgery, and not on the basis of the surgery itself [DE 28 at 6].

The ALJ's failure to discuss all of the relevant evidence affected not only the ALJ's RFC finding, but it impacted the ALJ's decision to discredit the treating physicians' opinions and Eaton's testimony (which, in reality, also impacted the RFC determination as well). An ALJ is required to consider opinion evidence from acceptable medical sources, such as licensed physicians. 20 C.F.R. §§ 404.1513(a), 404.1527(c). In addition, the regulations set out factors that the ALJ must consider in weighing medical opinions from treating sources, such as Drs. Ruzicka and Botros. *See* 20 C.F.R. § 404.1527(c). The ALJ must give controlling weight to the treating physicians' opinions if they are well-supported by medically acceptable diagnostic techniques and are not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(c); *Elder*, 529 F.3d at 415. Assessing what weight to afford the opinion depends on a number of factors, such as the examining relationship; the treatment relationship; the degree to which the source presents relevant evidence to support the opinion; the consistency of the source's opinion with the other evidence; whether the source specializes in an area related to the individual's impairment; and any other factors tending to support or refute the opinion. *Id*. If the ALJ discounts the treating physician's opinion after considering these factors, his decision must stand as long as he "minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Elder*, 529 F.3d at 415 (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Based on the treatment provided by Drs. Ruzicka and Botros since April/May 2011, they opined in the Summer of 2012 that Eaton's COPD and breathing/lung issues prevented him from performing full-time work at any exertional level. The ALJ declined to give these opinions controlling weight, but did so based on a mischaracterization of the evidence as it relates to the regulatory factors listed in § 404.1527(c).

For instance, one of the reasons that the ALJ did not endorse the treating doctors' opinions was because the opinions were allegedly inconsistent with the overall objective medical evidence. R. at 25-26. But the Court has already explained that the ALJ failed to consider the overall evidence, especially a significant amount of evidence from these very same doctors which supported a finding of disability. More specifically, in assessing the weight to afford the opinions, the ALJ plucked some positive remarks from medical records dated July 2012, July 2013, and September 2013, which indicated that Eaton was stable and doing fairly well. R. at 24-25. But the ALJ's reliance on these few positive notations to the exclusion of other medical evidence[7]—including August/September 2013 records which indicated that Eaton's lungs were still causing him major issues and days of incapacitation—demonstrates that the ALJ engaged in the type of cherry-picking that *Denton* prohibits. Moreover, it was improper for the ALJ to criticize both doctors for providing a simple checklist of Eaton's limitations on a pre-printed form, without recognizing that the forms merely represented a recap of the extensive course of treatment that the doctors had provided (and the ALJ mischaracterized).

The ALJ also discounted the opinions of Drs. Ruzicka and Botros because the ALJ believed that their restricting Eaton "to less than sedentary work" was inconsistent with Eaton's reported daily activities. However, the ALJ improperly mischaracterized Eaton's daily activities by not acknowledging Eaton's testimony that he was completely unable to lift his son (and needed the neighbor's help when Eaton's girlfriend wasn't home[8]), and that he could only

---

[7] In discounting the physicians' opinions, the ALJ also failed to note an additional emergency room visit by Eaton on account of his COPD exacerbation. *See*, R. at 428-46.

[8] Eaton's testimony was corroborated by a letter from the neighbor who indicated that she checked on Eaton and the infant ten to fifteen times daily in order to provide proper care for them. R. at 210-11.

perform limited household chores (that involved no lifting overhead or bending, and that allowed him to take several breaks due to his fatigue and coughing fits). R. at 50-53. *See Craft*, 539 F.3d at 680 (noting that when an ALJ considers a claimant's activities, the ALJ should consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant). Accordingly, the ALJ erred in discounting the treating doctors' opinions based on the ALJ's gross mischaracterization of the actual evidence of record. On remand, while the ALJ should consider Eaton's daily activities when evaluating his credibility, it should also be remembered that "a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Without acknowledging the differences between the demands of such activities and those of a full-time job, an ALJ is not entitled to use successful performance of life activities as a basis to determine that a claimant's claims of a disabling condition are not credible. *Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016) ("the critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer") (citation omitted).

Ultimately, the ALJ's reliance on the state agents' assessments, R. at 27, who opined that Eaton was capable of performing work at the medium exertional level, does not provide the necessary logical bridge from the evidence to the conclusions reached by the ALJ. The state agent opined in November 2011 that Eaton was capable of performing work at the medium exertional level without any postural, manipulative, visual, or communicative limitations, and only very minimal environmental limitations. R. at 381-388. On March 15, 2012, this opinion

11

was reviewed and affirmed by another state agent. R. at 400. However, the state agents cited none of the record for support, except for a single October 2011 pulmonary function study. And nothing indicates that the remainder of the record then available (or subsequently made available) was ever considered. *See Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective."). Moreover, the ALJ relied on the state agents' opinions because they were "generally consistent with the objective medical evidence"—but, to repeat, much of the "objective medical evidence" was inappropriately cherry-picked by the ALJ.

It should also be noted that the ALJ's mischaracterization of the medical record, along with the ALJ's mischaracterization of Eaton's stated daily activities, served as a basis to discredit Eaton's testimony. But the ALJ's failing to accurately consider the relevant evidence call into question the soundness of the ALJ's reasoning for discounting Eaton's complaints[9]—which then served as a basis for the ALJ's unsupported RFC finding. Thus, on remand, the ALJ must correct these errors in assessing Eaton's credibility and formulating Eaton's RFC.

## B. Step 5

Ultimately, without the RFC determination being supported by substantial evidence, the Court is unable to rely on the ALJ's determination that Eaton is capable of performing other

---

[9] Nor may the ALJ discount Eaton's testimony because he continued to smoke, without considering other factors, such as the addictive nature of the product, which impacts Eaton's ability to stop smoking. *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (discussing how the failure to stop smoking, even against medical advice, is an unreliable basis on which to rest a credibility determination).

work (step 5). More accurately stated, in deciding what work Eaton was capable of performing, the ALJ relied on the VE's testimony, which in turn, relied on the ALJ's hypothetical question that incorporated the inadequately supported RFC determination.

The law requires the ALJ to incorporate into the hypotheticals those impairments and limitations that the ALJ accepts as credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Eaton's claimed (and potentially credible) limitations caused by his COPD and bullous emphysema.[10]

Ultimately, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Eaton is capable of performing.[11] *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the

---

[10] In fact, the VE testified that Eaton's demonstrated coughing fits alone would have rendered him unemployable. But this testimony was not discussed by the ALJ.

[11] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Eaton's medical records, nor did he indicate in his responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, and not on the record itself or the limitations of the claimant himself. *Id.* (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), step five cannot be affirmed in this appeal.[12] *See Young,* 362 F.3d at 1003-05.

The remedy for the shortcomings noted herein is further consideration, as requested by Eaton's counsel, not an award of benefits.

## V. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: August 10, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[12] At step five, it will also be necessary for the ALJ to clarify whether Eaton could perform work as a laundry worker given Eaton's demonstrated sensitivity to pulmonary irritants. *See, e.g.,* Dictionary of Occupational Titles Code 589.685-038.